LUIS F. BALAGUER, Plaintiff and Appellant, *v.* F. R. VILLAVICENCIO, Defendant and Appellee.

No. 7358. Argued January 12, 1938.—Decided February 18, 1938.

*Henry G. Molina* and *Santiago de la Fuente* for appellant. *Juan Valldejuli Rodríguez* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

This is an action of replevin to recover a certain automobile. Provisional possession was obtained in accordance with the statute governing this proceeding. Subsequently the lower court heard the case on its merits and entered a judgment dismissing the complaint, ordering the return of the automobile in question to the defendant, and imposing costs upon the plaintiff.

Appellant alleges that he is the owner of the automobile in question, and that the defendant has deprived him of

possession thereof by virtue of an order entered by the District Court of San Juan in a replevin action, number 22,159, brought by F. R. Villavicencio against Fidela Trilla.

Defendant denied the essential allegations of the complaint, and as a special defenses, among others, averred that he had obtained the aforesaid car from Ochoa Fertilizer Corporation and had sold it by contract of conditional sale to, Fidela Trilla, against whom he had been compelled to bring, case number 22,159 to which appellant refers, which was; settled by the return of the car and by a refund of part of the purchase price to the buyer; that if at any time the plaintiff was in material possession of the automobile in, question, such possession was unlawful and contrary to, defendant's will.

The first assignment is to the effect that the trial court committed manifest error in weighing the evidence,

We do not find that such an error was committed. The lower court reached the only conclusions both as to law and as to fact which could have been reached after a careful analysis of the evidence adduced at the trial and of the applicable provisions of law. In our judgment the following statements appearing in the opinion of the trial judge are correct:

"'We have not found it necessary to be so naive as to believe in its entirely the story which López has told us or that which Balaguer has told, but if we were called upon to decide whether either was telling the whole truth, it is unquestionable that there is something shady or unlawful in the manner in which Balaguer acquired the property which has not come to light, but which prevents him from having acquired a good title, or at least from being the owner of the automobile in question, the only property in controversy in this suit.''

There is still more. Even assuming that the lower court was mistaken in refusing to believe Balaguer, the error would not be so manifest as to require a reversal of the judgment. Accepting his testimony as true and his theory of the case

as established, neither taken together nor taken separately do they show a right in his favor in the automobile which has given rise to this suit. The lower court made a summary of the testimony which Balaguer gave as witness on his own behalf, on the day of the trial. We are in accord with this summary, which we transcribe literally, believing it necessary for the discussion of the other assignments. The trial judge states:

"The story which Balaguer tells us is no less incredible than that which López tells us. Balaguer testified that a certain close friend of his suggested to him that he buy López' automobile and jewels since the latter had to leave the island, and since Mrs. Balaguer was at that time in the country place in Aibonito, he invited López to go up there to close the deal, so that Mrs. Balaguer would have an opportunity to see whether she liked the jewels, since he was buying them for her. That they must met in Cayey where López had dinner and Balaguer took coffee, and went on together to plaintiff's country place in Aibonito, where he found his wife sick. That on reaching the country place they got out of the automobile, Balaguer's wife then observing that López had left the automobile with the motor running, as if he were prepared to leave rapidly at any time if need be. That on entering the house Mrs. Balaguer came down and López took out the jewels in the dining room, and, a price having been agreed upon, demanded payment in bills (he wanted no checks), and after López had received payment and signed the document plaintiff's exhibit L, Balaguer's wife went into the kitchen to prepare coffee, and just then López took out a revolver or a pistol, and threatening those present with it, demanded the return of the jewels, retaining, of course, the purchase price which he had already received. Just then Mrs. Balaguer appeared on the scene, and, pointing a pistol at López, made him desist, and López, being under control by those present, asked for forgiveness and begged them not to file charges against him. Balaguer and his companions agreed to do as López asked, but took him to Aibonito to have the document plaintiff's exhibit L, above transcribed, signed also by other witnesses having no connection with Balaguer. In Aibonito they were seen by the policeman, Manuel Ortiz, whose testimony merits full credit. This policeman testified that he saw López, Balaguer, and another arrive, and that they stopped in front of a restaurant called 'El Dragón Rojo.' That they got there in a Graham Paige automobile

between 10 and 11 of the night of December 21 of the past year, and called the owner of the restaurant, Mr. González, Balaguer asking him to recommend a reliable chauffeur to take López to San Juan. They recommended a chauffeur who had a public car, and then Balaguer told González that he needed some witnesses to sign a document evidencing the purchase of an automobile from López. Balaguer said this within López' hearing. When the witnesses were ready to sign, González demanded that López sign, and the latter, who had stayed in the atuomobile called out 'You can all sign. I have already signed and received the money.' The document was then signed and López left for San Juan in the public car which had been recommended to him.

"Balaguer testified that he did not examine the records in the Automobile Bureau to determine whether López was in fact owner of the car. Similarly he did not have the jewels examined by an expert to see whether they were genuine until some days later when he showed them to Mr. Emilio Bouret, a jeweller in this city. That the purchase price was paid in banknotes, and that part of the price, some $600 more or less, his wife had in her savings, and that Balaguer furnished the rest."

We repeat that even accepting this testimony as true, we would still be obliged to hold that Balaguer acquired no title whatever from Providencio López, since the latter could not transmit that which he did not have. Appellant maintains the contrary in his second assignment, an error which the trial judge, in our opinion, did not commit for the following reasons.

■ Defendant proved that on October 2, 1934, he sold to Fidela Trilla a Graham Paige automobile, license 1721, at a price of $711, of which $611 was paid in the form appearing in the order signed by the buyer and offered in evidence by the defendant, the purchaser executing for the balance five promissory notes for $22.20 each, which were also offered and admitted in evidence. The transfer from Villavicencio to Fidela Trilla, as well as the prior transfer from Ochoa Fertilizer Corporation to Villavicencio, were not recorded in the Department of the Interior until December 31, 1934, so that on that date, in spite of the fact that since October 2,

1934 the automobile had been owned by Fidela Trilla by purchase from Villavicencio, the automobile appeared in the Automobile Bureau of the Department of the Interior recorded in the name of the original owner, Ochoa Fertilizer Corporation. If the plaintiff had consulted that before purchasing the car, he would have seen that Providencio López was not the owner and had no title whatsoever to the vehicle. The possession which López had of the automobile was not sufficient as a matter of law to establish title in his favor as against was true owner, Villavicencio. Balaguer purchased at his own risk and acquired no title to the automobile so sold for the reason that his vendor had no title whatever that he could legally transmit to him. See: *García et al.* v. *Savino et al.*, 19 P.R.R. 265; *García et al.* v. *Suro et al.*, 19 P.R.R. 720.

█ The fact that the conditional sale contract was not recorded until after the expiration of five days from the time of the sale to Balaguer is of no importance in this case. One of the purposes of the statute to provide for the recording of conditional sales contracts of personal property is to protect the purchaser in good faith from a sale by a mere possessor of such personal property, without legal title thereto. The failure to record would be of importance if the title which Balaguer claims to have had been derived from one of the prior owners, Fidela Trilla or Ochoa Fertilizer Corporation.

The third assignment must also be overruled. Appellant states that the court erred in holding that the nullity of the proceedings brought by Villavicencio to recover the automobile which was in Balaguer's possession was not something favorable to plaintiff.

The court did not hold that the proceedings brought by Villavicencio were void. The possibility was admitted, but it was not so held. The opinion reads as follows:

"Perhaps the proceeding brought by Villavicencio to recover an automobile then in possession of Balaguer is void, but in our judg-

ment the nullity of Villavicencio's proceeding is not something favorable to plaintiff, who is under a duty to show by a preponderance of the evidence that he is the owner or has a right to possession of the property in question.''

For that reason, and for the reasons set forth in the discussion of the second assignment, we believe that this assignment must also be overruled.

For the foregoing reasons, the judgment must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.